IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SANDRA HENRY                                                                                    PLAINTIFF

V.                                            NO. 09-4074

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                    DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Sandra Henry, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under Title XVI of the Act. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed her application for SSI on August 11, 2005, alleging disability since December 9, 1987. (Tr. 87).[1] Plaintiff's application was denied initially and upon reconsideration. (Tr. 34-35, 41-43 ). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 10, 2007, where Plaintiff and a Vocational Expert (VE) appeared and testified. (Tr. 175-195 ). On June 22, 2007, the ALJ entered his decision, denying Plaintiff's request for SSI benefits. (Tr.10-20) . The ALJ found that the medical evidence established that Plaintiff had a diagnosis of carpal tunnel syndrome and was post-status

---

[1] At the hearing before the ALJ, Plaintiff's attorney orally amended the onset date to be consistent with the date of the application - August 11, 2005. (Tr. 180).

trauma to the wrist and upper extremity with subsequent fusion of left wrist, and residuals of chronic pain. (Tr. 19). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and concluded that Plaintiff had the residual functional capacity (RFC) to perform sedentary work activity, which involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. (Tr. 19). He found that Plaintiff would not be able to perform any past relevant work, but with the assistance of the VE, concluded that Section 416.969 of Regulations No. 16 and Medical-Vocational Rule 201.18, Table No. 1 of Appendix 2, Subpart P, directed a conclusion that, considering the Plaintiff's RFC, age, education, and work experience, she was not disabled. (Tr. 20). Plaintiff's request for a review was denied by the Appeals Council on June 29, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 4-6).

**Evidence Presented**

Plaintiff was born in 1963 and completed the ninth grade of high school. (Tr. 178). Her previous work history included a position on a debone line for one year and three months in 1985, a short time at a nursing home as a C.N.A.(certified nursing assistant) in 1994, and a material inspector at a sewing company for two months in 2004. (Tr. 103). In 1987, Plaintiff was stabbed in her left hand, resulting in permanent injuries to her left hand and wrist. (Tr. 183). As a result, fusion surgery was performed on her left wrist in 1988. (Tr. 183).

On May 17, 2002, Plaintiff was seen at an orthopedic clinic for evaluation of her left upper extremity and right pelvic pain. (Tr. 122). Plaintiff complained of generalized soreness and achiness in her upper extremity and swelling and stiffness in her fingers. (Tr. 122). She was

AO72A
(Rev. 8/82)

found to have full range of motion of her elbow, but no range of motion of her wrist. She had atrophy of her extensor muscles, but was able to fully flex and extend her fingers. X-rays of her forearm revealed evidence of solid fusion at the wrist. A prescription for Naprosyn was recommended and the physician noted that there was nothing else to really help her symptoms. (Tr. 122).

Beginning on July 14, 2003, and continuing through October 18, 2006, Plaintiff was treated by Dr. Jeffrey T. Dehaan, of Adult Hip and Back Surgery-General Orthopedics. (Tr. 133, 135, 147, 168, 170-171). In 2003, Dr. Dehaan found that Plaintiff had an arthrodesis[2] of her left wrist and had some pain over the lateral epicondyle as well as in the dorsal extensor apparatus. X-rays showed the arthrodesis of the wrist, but was otherwise negative. (Tr. 135). Dr. Dehaan commented: "At this point I think she is having some mild tennis elbow type problems. She declined an injection, therefore we'll put her on an anti-inflammatory regimen and see how this helps her." (Tr. 135). He also noted that the elbow had mild arthritic changes only. (Tr. 147).

On September 14, 2004, Plaintiff presented herself to the Stamps Medical Clinic, complaining of left hand pain. (Tr. 127). She was unable to bend her left wrist due to the 1988 surgery, and her grip was weak. (Tr. 127). She again presented to the Stamps Medical Clinic on January 7, 2005, with left hand pain, stating that it stayed swollen. (Tr. 125).

On January 24, 2005, Plaintiff returned to Dr. Dehaan for follow-up with her left upper extremity problems, complaining of pain over the dorsal wad at the proximal forearm and along her wrist fusion area. (Tr. 135). Dr. Dehaan stated:

---

[2]Arthrodesis - the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells; called also artificial ankylosis. Dorland's Illustrated Medical Dictionary 159 (31st ed. 2007).

> I don't think there's anything surgical that I can do to help her. ...I think for the most part there's nothing I have to offer her surgically, so she's going to have to pretty much live with what she's got for awhile and see if things change down the road. In the interim, she needs to continue with an anti-inflammatory regimen.

(Tr. 135).

Plaintiff saw Dr. Dehaan again on July 13, 2005, complaining of a lot of pain in her hand, numbness in her fingers, and difficulty using her hand. (Tr. 133). Dr. Dehaan found on examination that Plaintiff had a positive Phalen's sign at the wrist with compression and a positive Tinel's as well.[3] (Tr. 133). However, it was difficult for Dr. Dehaan to tell whether some atrophy was from the carpal or her past surgeries. Dr. Dehaan felt that carpal tunnel syndrome should be considered, and was going to try to get a nerve conduction study on her. He concluded in his report:

> At this point and time I don't think it's possible for her to work given her upper extremity weakness and the fact that she had a fusion, and has really been quite debilitated with her left hand injury. I think at this point she's not able to cope with the workforce or do anything in the workforce. Hopefully with time and further surgery she will be able to do so. We'll check her back here again following her NCVs.

(Tr. 133). The nerve conduction study done on July 20, 2005, suggested a normal conduction study of the left median and ulnar nerves from the axillae to the fingertips. (Tr. 145). Therefore, on August 3, 2005, Dr. Dehaan concluded that Plaintiff's difficulty was strictly secondary to the traumatic problem that she had and the subsequent fusion to her wrist, and also injury to the entire left upper extremity. (Tr. 133). Once again, Dr. Dehaan stated that he did not think there

---

[3]Phalen maneuver (for detection of carpal tunnel syndrome), the size of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the inovlved arm and inflating to a point between diastolic and systolic pressure for 30 to 60 seconds.
Tinel sign - a tingling sensation in the dital end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve. Dorland's Illustrated Medical Dictionary 1117, 1741 (31st ed. 2007).

was anything surgically that he could do to benefit Plaintiff. "At this point and time I think she's got to live with what she has and be taking medication as needed. I'll renew her medications today and I'll see her back here again as needed." (Tr. 133).

On September 14, 2005, a Physical Residual Functional Capacity (RFC) Assessment was completed by Dr. Stephen Whaley. (Tr. 157-164). Dr. Whaley found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and that Plaintiff's ability to push and/or pull was limited in her upper extremities. (Tr. 158). He also found that no postural, visual, communicative, or environmental limitations were established, but that Plaintiff had limited handling (gross manipulation) and limited fingering (fine manipulation) abilities. (Tr. 160).

At her last visit to Dr. Dehaan on October 18, 2006, Plaintiff complained of pain in the wrist area and fingers. She indicated that she had difficulty using her hand and arm and was recalcitrant to any surgical or nonsurgical intervention. (Tr. 168). Dr. Dehaan concluded:

> At this point I don't think there's anything else surgically that's going to be possible for her or allow her to get better function out of her wrist and/or hand. I think that she will be limited in her activities and in the things she can do. I think that at this point she's probably unemployable and will continue to be so.

(Tr. 168).

At the hearing held on April 10, 2007, Plaintiff testified that the reason she quit her work as a material inspector was because he hands were swelling. (Tr. 183). She stated that her hands would swell when she did things like wash dishes and lift items. (Tr. 184). Plaintiff stated that she wore a brace on her left hand all the time, and that sometimes it helped. (Tr. 186). When

AO72A
(Rev. 8/82)

she did a lot with her left hand, it would draw up. (Tr. 186). She stated that when she last saw Dr. Dehaan, he took her off of medication and at the time of the hearing, she was not taking any medication. (Tr. 187). Plaintiff stated that she could not go back to work because of her hand - that the pain felt like something was stabbing her, and that she had pain all the time. (Tr. 188). She did her own laundry and prepared her own simple meals. With help from her friend, she cleaned her bathroom and maintained her mobile home. (Tr. 188). Plaintiff stated that she had a driver's license, grocery shopped some, and spent time watching television and reading. She attended church regularly, but did not do any other outside activities. She stated that she was unable to hold on to things with her left hand, but could lift a 10 pound bag of potatoes with her right hand. (Tr. 190). She was able to take the brace on her left hand off with her right hand. (Tr. 192).

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from

the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

AO72A
(Rev. 8/82)

**Discussion**

The ALJ noted that the proper focus was on Plaintiff's ability to function despite her impairment, rather than on a diagnosis, stating that a diagnosis is not disabling per se but rather there must be a functional loss establishing an inability to engage in substantial gainful activity before disability occurs. The ALJ went on to find that the lack of any vocational capacity by Plaintiff was voluntary and an option which she selected.

> This case presents the issue of a self destructive attitude in a woman who has the cognitive ability to make reasonable and mature choices and, who the record supports, is seeking to minimize her capabilities in order to present herself in a light most favorable to obtain benefits. She has simply made a lifestyle decision and removed herself from working on a full-time basis, not because of a disability, but because of a voluntary choice that simply removes full time vocational functioning from consideration.

(Tr. 18). He recognized that the consulting physician expressed the opinion that Plaintiff had the RFC to do light exertional work activity, but found that evidence submitted subsequent to the analysis was supportive of more limitations than originally thought, and concluded that Plaintiff retained the RFC for sedentary work activity.

The ALJ found that Plaintiff could not return to her past work, and recognized that the burden of proof thereafter shifted to the Commissioner of Social Security to establish that there were substantial numbers of jobs existing in the national economy that Plaintiff could perform with her particular limitations. However, the ALJ failed to fully address how Plaintiff's ability to function would be impacted by her lack of ability to move her left wrist. Instead, he thereafter referred to the Medical-Vocational Guidelines, and concluded that Plaintiff's RFC and vocational profile coincided with the criteria of Rule 201.18, which mandated a finding that there were substantial numbers of jobs existing in the national economy which Plaintiff could perform,

-8-

considering her abilities and limitations. Although a VE appeared and testified at the hearing, the ALJ did not propose a hypothetical to the VE setting forth Plaintiff's lack of range of motion with her left wrist in order to determine what sedentary jobs were available for Plaintiff to perform. In fact, no hypothetical was presented to the VE at all. Instead, the VE merely testified about the level of activity which was required for Plaintiff's previous positions.

The Court is concerned that the ALJ did not address how Plaintiff's inability to fully utilize her left hand affected her functional ability to do sedentary work. The medical evidence clearly reflected that although in 2002, Plaintiff was able to fully flex and extend her fingers, she has had no range of motion of her wrist since the fusion surgery. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §416.967(a). Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions, and any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. Social Security Ruling 96-9P, 1996 WL 374185 *8.

The Court finds that this matter should be remanded to the ALJ for him to present a proper hypothetical to the VE, asking the VE to consider Plaintiff's limitations with her left hand and wrist and to specify what jobs, if any, exist in the national economy that Plaintiff would be able to perform with those limitations. The ALJ should also obtain a physical RFC assessment from Dr. Dehaan. Once received, the ALJ should then re-evaluate Plaintiff's RFC in light of the new information.

Based upon the foregoing, the undersigned reverses the decision of the ALJ and remands

this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

      IT IS SO ORDERED this 1st day of June, 2010.

                                      /s/ *Erin L. Setser*
                                      HON. ERIN L. SETSER
                                      UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)